IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**NATHAN FELTS,**

    Plaintiff,

v.                                                             No. 13-CV-1094-MCA/SCY

**BOARD OF COUNTY COMMISSIONERS
OF VALENCIA COUNTY, et. al.,**

    Defendants.

## ORDER

**THIS MATTER** is before the Court on *Defendants' Motion in Limine to Exclude Evidence and/or Recovery of Medical Bills as Opposed to What was Paid by Medicaid Because Such Alleged Damages are Wholly Speculative and Not Subject to the Collateral Source Rule*, filed October 19, 2016. [Doc. 72] This Court has considered the *Motion*, the briefs, the relevant law, and is otherwise fully informed. The Court concludes that the *Motion* is not well taken, and shall be denied.

**DISCUSSION**

Plaintiff was shot in the face and in the shoulder by Valencia County Deputy Sheriff David Hill. [Doc. 46 ¶ 34; Doc. 51 ¶ 34] He filed this lawsuit claiming, among other things, excessive force in violation of his Fourth Amendment rights, and assault and battery under the New Mexico Tort Claims Act. [Doc. 12 ¶¶ 64, 68-70] Additional facts are available in the Court's previous rulings including, most recently, the Court's September 23, 2016 *Memorandum Opinion and Order* pertaining to Defendants' and Plaintiff's respective *Motions for Summary Judgment*. [Doc. 67]

1

Plaintiff contends that the medical bills associated with this lawsuit total $299,796.97.  [Doc. 73 p. 1; Doc. 72-2 p. 12-13]  $145,198.00 of that amount was paid by Medicaid through New Mexico's Medicaid management company, Presbyterian Salud (now called New Mexico Centennial Care).  [Doc. 72-2 p. 12-13; Doc. 73 p. 1]  The parties suggest, but have yet to demonstrate, that the remaining sum has been or will be "written off" by the hospital.  [Doc. 72 p. 5; Doc. 73 p. 6]  Defendants argue that some of the charges comprising Plaintiff's total medical bills are unrelated to the shooting incident underlying this lawsuit; however, this contention is not the subject of the present *Motion*, and the issue is not addressed in this *Order*.  [Doc. 72 p. 2]

In the present *Motion*, Defendants seek to bar from evidence at trial documentation or testimony regarding the amount of Plaintiff's medical bills as opposed to the sum actually paid by Medicaid.  [Doc. 72 p. 1-3]  In support of their *Motion*, Defendants argue that Plaintiff's Medicaid benefits are not a "collateral source" because a portion of Valencia County tax revenues contribute to the funding of Medicaid.  [Doc. 72 p. 4]

**The Collateral Source Rule**

"The general rule is that benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages."  Dan B. Dobbs, Law of Remedies 372-73 (2d ed. 1993).  New Mexico adheres to this general rule.  *See Pipkins v. TA Operating Corp.*, 466 F. Supp. 2d 1255, 1258 (D.N.M. 2006) ("Under New Mexico law, compensation received from a collateral source does not operate to reduce damages recoverable from a wrongdoer." (Alteration omitted));

2

*Sunnyland Farms, Inc. v. Cent. N.M. Elec. Co-op., Inc.*, 301 P.3d 387, 401 (N.M. 2013) ("In New Mexico, the collateral source rule dictates that the contribution of a collateral source must operate to benefit the plaintiff rather than the defendant."). Thus, "[u]nder the collateral source rule, a plaintiff may recover his full losses from the responsible defendant, even though he may have recovered part of his losses from a collateral source." *Pipkins*, 466 F. Supp. 2d at 1258. A "collateral source" is a source of funds that is "distinct from the funds of the defendant." *Berg v. United States*, 806 F.2d 978, 984 (10th Cir. 1986). "One of the reasons commonly given in support of the collateral source rule is that the rule preserves subrogation rights of any insurer who paid benefits to the plaintiff." Dobbs, *supra*, at 374.

"A number of cases have allowed the plaintiff to recover full damages against the defendant, even though the plaintiff's loss has been reduced by some form of public benefit." *Id.* at 373; *Cates v. Wilson*, 361 S.E.2d 734, 737-38 (N.C. 1987) ("Medicaid is a form of insurance paid for by taxes collected from society in general. The Medicaid program is social legislation; it is the equivalent of health insurance for the needy; and, just as any other insurance form, it is an acceptable collateral source."); *Young v. Baltimore & O. R. Co.*, 146 S.E.2d 441, 446 (N.C. 1966) ("The majority rule of the cases is that an injured person is entitled to recover . . . damages for reasonable medical, hospital, or nursing services rendered him, [regardless of] whether these are rendered him gratuitously[.]"). And in the Tenth Circuit, "[o]ur cases have always treated payments from the public treasury, at least when funded by a tax scheme to which the injured party

contributed, as from a collateral source." *Green v. Denver & Rio Grande W. R.R. Co.*, 59 F.3d 1029, 1032 (10th Cir. 1995).

**Medicaid in New Mexico**

"The New Mexico Medicaid program is administered pursuant to regulations promulgated by the federal department of health and human services under Title XIX of the Social Security Act . . . and by state statute." NMAC 8.300.1.3. The New Mexico Human Services Department is responsible for the administration of the Medicaid program. NMAC 8.300.1.9. And when the state Human Services Department "makes medical assistance payments on behalf of a recipient, the department is subrogated to any right of the recipient against a third party for recovery of medical expenses to the extent that the department has made payment." NMSA 1978, Section 27-2-23(B) (2007).

Medicaid is jointly funded by the federal government and states. Medicaid.gov, Medicaid Financing & Reimbursement, https://www.medicaid.gov/medicaid/financing-and-reimbursement/ (last visited June 13, 2017). The federal government pays states for a specified percentage of Medicaid program expenditures, which scheme is called the Federal Medical Assistance Percentage (FMAP). *Id.* From 2012-2015, the years during which Plaintiff received the relevant medical care, the FMAP in New Mexico was just under 70%,[1] meaning that the State of New Mexico's contribution to Medicaid was

---

[1] In 2012, New Mexico's FMAP was 69.36, in 2013 it was 69.07, in 2014 it was 69.20, and in 2015, it was 69.65. *See* Federal Medical Assistance Percentages and Enhanced Federal Medical Assistance Percentages, Effective October 1, 2011-September 30, 2012, (Fiscal Year 2012), 75 Fed. Reg. 69,803 (Nov. 10, 2010); Federal Medical Assistance Percentages and Enhanced Federal Medical Assistance Percentages, Effective October 1, 2012-September 30, 2013, (Fiscal Year 2013), 76 Fed. Reg. 74,062 (Nov. 30, 2011);

approximately 30%.  U.S. Department of Health & Human Services, <u>Federal Medical Assistance Percentages or Federal Financial Participation in State Assistance Expenditures</u>, (3/1/2015) available at https://aspe.hhs.gov/federal-medical-assistance-percentages-or-federal-financial-participation-state-assistance-expenditures.

**Defendants' Arguments**

Defendants argue that "Medicaid payments are not collateral to the County" because the County "collected taxes from its citizens and paid them into the Medicaid fund as required by New Mexico law."  [Doc. 72 p. 5-6]  The "Medicaid fund" to which Defendants refer is the "county-supported Medicaid fund" which was created for the purpose of "leverag[ing] existing resources to better address the state's health care needs."  NMSA 1978, § 27-10-2(B) (1996).  The county-supported Medicaid fund accomplishes "this purpose by using local revenues to support the state [M]edicaid program and to institute or support primary care health care services pursuant to Section 24-1A-3.1 NMSA 1978."  NMSA 1978, § 27-10-2(B).  "Money appropriated from the county-supported [M]edicaid fund to institute or support primary care health care services pursuant to Section 24-1A-3.1 NMSA 1978 [is] supplemental to general fund appropriations."  NMSA 1978, § 27-10-2(B).  Valencia County contributes to this fund a sum representing 1/16 of 1% of the gross receipts taxes it collects from any person engaging in business in the County.  [Doc. 72-1 p. 1]  *See* NMSA 1978, § 7-20E-18(A)

---

Federal Medical Assistance Percentages and Enhanced Federal Medical Assistance Percentages, Effective October 1, 2013-September 30, 2014, (Fiscal Year 2014), 77 Fed. Reg. 71,422 (Nov. 30, 2012); Federal Medical Assistance Percentages and Enhanced Federal Medical Assistance Percentages, Effective October 1, 2014-September 30, 2015, (Fiscal Year 2015), 79 Fed. Reg. 3,387 (Jan. 21, 2014).

(2009) (authorizing the governing body of any county to establish a tax at a rate of one-sixteenth percent of the gross receipts to fund the county-supported Medicaid fund); NMSA 1978, § 27-10-4(A) (1993) (requiring a county that does not establish such a tax to provide an equivalent sum from another source of county revenue). Plaintiff contends, and Defendants do not disagree, that as a resident of Valencia County who pays gross receipts taxes on his purchases in the County, Plaintiff contributes to the county-supported Medicaid fund. [Doc. 73 p. 5]

Defendants' argument that the contribution to the county-supported Medicaid fund bars application of the collateral source rule is specious. That the Human Services Department, rather than Valencia County has the right of subrogation illustrates that Medicaid, which paid Plaintiff's medical bills, is a source that is distinct from Valencia County, and is, therefore, a collateral source. *See Berg*, 806 F.2d at 984 (defining a "collateral source" as one that is "distinct from the funds of the defendant"); Dobbs, *supra*, at 374 (recognizing that "the collateral source rule . . . preserves subrogation rights of any insurer who paid benefits to the plaintiff"); *Cates*, 361 S.E.2d at 737-38 ("Medicaid is a form of insurance paid for by taxes collected from society in general.").

Further, while it is true that the County contributes 1/16 of 1% of the gross receipts taxes that it collects to the county-supported Medicaid fund, this fact hardly supports Defendants' assertion that the County has in effect already paid Plaintiff's medical bills. [Doc. 72 p. 4] As discussed earlier, approximately seventy percent of the state's Medicaid funding is provided by the federal government. The state's thirty percent share comes from general fund appropriations. *See* NMSA 1978, § 27-10-2(B)

6

("Money appropriated from the county-supported [M]edicaid fund . . . shall be supplemental to general fund appropriations."). The county-supported Medicaid fund, to which Valencia County, and every county in New Mexico, is required to contribute, is "supplemental to" the state's general fund contribution. *Id.* Thus, while Valencia County's contribution could, theoretically, account for some portion of the Medicaid funds that were used to pay Plaintiff's medical bills, this theoretical possibility does not entitle Defendants to claim that they are the source of the Medicaid used to pay Plaintiff's hospital bills.

The circumstances here in no way resemble the facts in *District of Columbia v. Jackson*, 451 A.2d 867 (D.C. 1982), a case that Defendants cite in support of their contention that Medicaid payments are not collateral to the County. [Doc. 72 p. 5-6] In *Jackson*, the District of Columbia was found liable in a wrongful death case. *Id.* at 868. The Medicaid program in the District of Columbia had been "brought into being" by the District, and the District was "solely responsible for administering the [Medicaid] program." *Id.* at 873. The cost of the Medicaid program was funded half by the federal government and half by the District of Columbia. *Id.* at 873. Under those circumstances, the *Jackson* court held that the Medicaid benefits that were used to pay the decedent's medical bills were not from a collateral source. *Id.* at 869, 873. Here, the County of Valencia did not bring the Medicaid program "into being," nor does it administer the program. Its contribution of a fraction of a percent of its gross receipts tax to the county-supported Medicaid fund is incomparable to the District's fifty-percent contribution to the Medicaid fund, and its administration of the Medicaid program discussed in *Jackson*.

*Green*, another case cited by Defendants, supports the Court's conclusion that the Medicaid funds used to pay Plaintiff's medical bills are a collateral source. In *Green*, the plaintiff sued his employer, a railroad, under the Federal Employers' Liability Act (FELA) after he suffered a disabling injury. *Id.* 59 F.3d at 1030. The railroad argued the plaintiff's Railroad Retirement Act (RRA) disability benefits were not a collateral source, and were thus admissible in evidence to offset any damages that might be awarded. *Green*, 59 F.3d at 1032. Although the defendant railroad had contributed to the RRA fund, our Tenth Circuit held that the collateral source rule prohibited evidence of the plaintiff's disability benefits because "the RRA is essentially social security for common carrier employees, and benefits [are] not directly attributable to contributions by the defendant railroad[.]" *Id.* at 1032-33. In a similar vein, Medicaid is essentially "health insurance for the needy" and the medical bills paid on Plaintiff's behalf by Medicaid are not directly attributable to Valencia County. *Cates*, 361 S.E.2d at 737-38 (citing *Bennett v. Haley*, 208 S.E.2d 302, 311 (1974)).

*Berg*, is not helpful to Defendants. In that case, Berg, a retired Colonel in the United States Army prevailed in a Federal Tort Claims Act (FTCA) lawsuit against the government for injuries that he suffered as a result of the Fitzsimmons Army Medical Center's negligence. 806 F.2d at 980-81. "Berg's medical expenses were paid in large part by Medicare[,] and [t]he government claim[ed] that the amount of Medicare assistance that Berg received should be deducted from his FTCA award. Berg argue[d] that Medicare is a collateral source and that no deduction is permitted." *Id.* at 984.

8

The *Berg* court noted that in a previous FTCA case the test that was "applied to determine whether a [social security disability] payment was collateral" to the federal government "focused on whether the injured party had contributed to the fund from which he or she was now collecting." *Id.* This was because "[c]ourts distinguish between those benefits that come from unfunded general revenues of the United States (deductible) and those that come from a special fund supplied *in part* by the beneficiary or a relative upon whom the beneficiary is dependent (nondeductible)." *Id.* at 985. However, the *Berg* court recognized that "it is . . . impossible to distinguish accurately which part of a fund that has been produced by millions of contributors is attributable to the government and which part is attributable to a particular injured party" in order to distinguish between those benefits that come from unfunded general revenues of the United States (deductible) and those that come from a special fund supplied *in part* by the beneficiary or a relative upon whom the beneficiary is dependent." *Id.* "Therefore," the *Berg* court held, "we require that the plaintiff bear the burden of showing only that he or she contributed to a special fund that is separate and distinct from general government revenues." *Id.* Because Berg had contributed to the Social Security fund by paying employment taxes, and because that fund was distinct from "general government revenues[,]" the *Berg* court concluded that the Medicare funds that Berg received were collateral to the federal government. *Id.* at 985-86.

The parallels between Plaintiff's lawsuit and the FTCA claim in *Berg* are slim. However, to the extent that Defendants seek to analogize this case to *Berg*, the outcome does not favor their position. In *Berg*, the federal government was both the defendant

and the administrator of the Medicare program, which is funded by a particular federal tax scheme. *Id.* at 985. The funds used to pay Berg's Medicare came out of the Federal Hospital Insurance Trust Fund, to which Berg had contributed by paying employment taxes. *Id.* In this case, Valencia County did not create nor does it administer Medicaid. The Medicaid payments made on Plaintiff's behalf are attributable to the State Human Services Department, which has a right of subrogation and will, therefore, recoup its funds from Defendant should he prevail at trial on his medical-damages claim. The Medicaid payments are not attributable to Valencia County, and to the extent that the county-supported Medicaid fund may have been a source of some portion of the Medicaid funds, Plaintiff contributed to that fund by paying taxes on his purchases within Valencia County.

Nor is the Court persuaded by Defendants' argument that Plaintiff should be prohibited from introducing evidence of medical bills that were "written-off." As noted in *Pipkins*, 466 F. Supp. 2d at 1259, "[m]any courts characterize contractual write offs as a benefit or contribution received by the plaintiff from a collateral source and hold that the collateral source rule applies to such write offs." And "[a] majority of courts have concluded that plaintiffs are entitled to claim and recover the full amount of reasonable medical expenses charged, based on the reasonable value of medical services rendered, including amounts written off from the bills pursuant to contractual rate reductions." *Id.* (Citation and alteration omitted). "For courts following this approach, the amount written off pursuant to an agreement with an insurance carrier (including Medicare or

10

Medicaid) constitutes a benefit or contribution received by the plaintiff from a source collateral to the tortfeasor." *Id.*

This approach comports with the Restatement (Second) of Torts § 920A cmt. c(3), which provides that "the fact that the doctor did not charge for his services or the plaintiff was treated in a veterans hospital does not prevent his recovery for the reasonable value of the services." And it is in keeping with the "legal and policy underpinnings of New Mexico courts' approach to the collateral source rule." *Pipkins*, 466 F. Supp. 2d at 1261 (citing *Mobley v. Garcia,* 54 N.M. 175, 217 P.2d 256, 257 (1950), which stated that "[t]he right of redress for wrong is fundamental. Charity cannot be made a substitute for such right, nor can benevolence be made a set-off against the acts of a tortfeasor.").

Finally, the Court agrees with Plaintiff that the jury's determination of the reasonable value of Plaintiff's health care expenses should be based on a presentation of the amount billed, rather than the amount paid by Medicaid on Plaintiff's behalf. [Doc. 73 p. 5] As noted by another court in our circuit,

> evidence of the amount actually paid by Medicaid and accepted by his healthcare providers is not relevant to the jury's determination of the reasonable value of [the] [p]laintiff's healthcare expenses; rather, it is the amount billed that is most relevant to determining the value of the services rendered. Medicaid rates are commonly much lower than a provider's customary fee, thus the amount actually billed by [the] [p]laintiff's healthcare providers is the most suitable evidence pointing to the true value of the services rendered.

*Cox v. Wilson*, No. 15-CV-0128-WJM-NYW, 2016 WL 6803702, at *4–5 (D. Colo. Nov. 17, 2016), *reconsideration denied*, No. 15-CV-0128-WJM-NYW, 2016 WL 7034975 (D. Colo. Dec. 1, 2016).

**CONCLUSION**

For the reasons stated herein, *Defendants' Motion in Limine to Exclude Evidence and/or Recovery of Medical Bills as Opposed to What was Paid by Medicaid Because Such Alleged Damages are Wholly Speculative and Not Subject to the Collateral Source Rule*, filed October 19, 2016 [Doc. 72] is **DENIED.**

**SO ORDERED** this 31st day of July, 2017 in Albuquerque, New Mexico.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　**M. CHRISTINA ARMIJO**
　　　　　　　　　　　　　　　　　　　**Chief United States District Judge**